# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Daa'iyah Wallace,                           :
                          Petitioner         :
                                             :
              v.                             :    No. 1725 C.D. 2016
                                             :    Submitted: March 3, 2017
Unemployment Compensation                    :
Board of Review,                             :
                          Respondent         :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE JULIA K. HEARTHWAY, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**              **FILED:  May 9, 2017**

Daa'iyah Wallace (Claimant), proceeding pro se, petitions for review of the Order of the Unemployment Compensation (UC) Board of Review, which affirmed the decision of a UC Referee (Referee) finding Claimant ineligible for benefits pursuant to Section 402(b) of the UC Law[1] because she did not have a necessitous and compelling reason to voluntarily quit her employment.  On appeal, Claimant challenges the findings of fact describing her job title and work duties and asserts

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. § 802(b) (providing, in relevant part, that an employee is ineligible for UC benefits for any week the employee's "unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature").

that Sykes Enterprises (Employer) unilaterally changed her title and increased her work duties after she was hired without increasing her pay to correspond to those duties.[2] Discerning no error or abuse of discretion, we affirm.

Claimant filed an application for UC benefits asserting that she quit her position as a Data Analyst for Employer on March 23, 2016 because "Employer [had] changed [her] duties and title without notice on [her] second day of employment; however failed to raise[] [her] pay to satisfy [the] new position['s]" duties despite her repeated requests for an increase. (Internet Initial Claims Form at 3, R. Item 3.) Employer responded that Claimant resigned due to dissatisfaction with her pay and work duties and for personal financial issues. (Employer Questionnaire at 1, R. Item 4.) The local Service Center found Claimant ineligible for benefits pursuant to Section 402(b) because dissatisfaction with one's pay is not a necessitous and compelling reason for quitting. (Notice of Determination, R. Item 6.) Claimant appealed, and the matter was assigned to the Referee for a hearing, at which Claimant, a witness for Claimant, and a witness for Employer testified.

---

[2] On January 30, 2017, Claimant filed a Motion to Amend Brief (Motion) requesting to add a "Statement of the reasons to allow an [a]ppeal" (Statement) and a revised table of contents to her brief, which she attached to the Application. The Statement lists three particular findings of fact which Claimant asserts were based on untruthful statements by Employer's witness. Claimant had not included proof that she had served the Board with the Motion, so she was notified that she had to mail a copy to the Board and file a new Motion with proof of service within 14 days of January 30, 2017. Claimant refiled the Motion on February 13, 2017, although the Statement and the revised table of contents were not attached thereto, with proof that she served the Board on February 11, 2017. The Board, which had already filed its brief on February 10, 2017, did not respond or object to the Motion. The Board's brief does address Claimant's evidentiary challenges to the findings of fact it adopted, which Claimant generally had set forth in her original brief. Because there is no prejudice to the Board, we grant Claimant's Motion and amend her brief to include the revised table of contents and Statement.

Claimant testified[3] that she was hired as a customer service representative (CSR) on September 21, 2015 at $14.25 per hour, but during her training on September 22, 2015, she was told to shadow another employee, who was not a CSR. She stated that Employer made her a Data Analyst, which involved greater duties and responsibilities than a CSR. Claimant raised her concerns that her CSR pay was not commensurate with her new position and increased duties with her supervisors several times between late October and January. She was advised that they would look into it and that a pay raise could occur at the end of the year when a new budget was established. Claimant explained that after the year ended and it reached January/February without an increase in her pay, she submitted her resignation.[4]

Employer presented the testimony of one of its Senior Managers (Manager) who indicated that all of Employer's workers are given the CSR title regardless of their role on the floor.[5] Manager indicated that Claimant did not take calls every day, but would occasionally do so if Employer asked. He indicated that the duties Claimant described that she now performed, putting data into a spreadsheet and transferring it to Employer's clients, did not significantly differ from what a CSR does, and, in fact, he believed Claimant's job was easier than doing the traditional

---

[3] Claimant's testimony is found at pages 5 through 15 of the Hearing Transcript. (R. Item 19.)

[4] In addition, Claimant offered the testimony of a former co-worker, who was in Claimant's training class for the CSR position and whose work title and duties also were changed within two weeks of her initial employment. (Hr'g Tr. at 16.) Co-worker similarly was told that she should be paid more, but no increase ever occurred. (Id. at 16-17.) Claimant also submitted the job description for the CSR position, as well as information regarding Employer's Data Analyst positions, which paid, according to an employment posting, $18 to $22 per hour. (Claimant's Exs. C-2, C-3, R. Item 16.)

[5] Manager's testimony is found at pages 16 to 23 of the Hearing Transcript.

call center work. Manager stated that, because he did not begin working for Employer until January 2016, he had no knowledge of what training Claimant underwent in September 2015 or of any conversations Claimant may have had with her prior supervisors regarding her work duties or pay in November and December 2015.

Based on this evidence, the Referee made the following findings of fact:

1. For the purposes of this appeal[,] the Claimant was last employed as a full-time customer service representative with [Employer] from September 21, 2015 until March 22, 2016, her last day of work, at a final rate of pay of $14.25 per hour.

2. At the time of hire, the Claimant initially understood that she would be receiving and initiating calls in the Employer's call center as a customer service representative.

3. On her second day of employment, the Employer indicated to the Claimant that she would be doing slightly different duties.

4. The Employer did not change the Claimant's title or radically change the nature of the Claimant's work.

5. As a call center representative, the Claimant would have been required to research circumstances surrounding a problem with a customer's order and to analyze the circumstances to rectify the matter.

6. During the course of this employment[,] the Claimant entered data onto a spreadsheet and indicated reasons for problems indicated by the data.

7. As needed, the Claimant was required to take and initiate calls in the call center, although this was not a common occurrence.

8. During the course of this employment[,] the Claimant made several requests for a raise to the Employer based on her opinion of what would be acceptable with respect to her job duties.

4

9. On March 22, 2016, the Claimant voluntarily left this employment because the Employer did not accommodate her request for a raise.

(Referee Decision, Findings of Fact (FOF) ¶¶ 1-9.) The Referee credited Claimant's testimony that her job duties changed on her second day of employment, but found that, "[a]s the Claimant remained in her position for six months, the Claimant demonstrated the acceptability of the [new] job duties." (Referee Decision at 2.) Additionally, the Referee credited Manager's testimony and resolved any conflicts in Employer's favor. (Id.) Therefore, the Referee determined that Claimant was not given a new job title, her new duties were not significantly different than those she was hired to perform, and she continued to perform customer service work during her employment. (Id.) Noting that not receiving a requested raise and "dissatisfaction with an employer's reasonable modification in employment conditions" or in "reasonable changes in hours, assigned duties or worksites may not, in and of themselves" provide good cause for quitting, the Referee held that Claimant was ineligible for benefits under Section 402(b). (Id.)

Claimant appealed to the Board, arguing, *inter alia*, that Manager was not truthful, the Referee improperly prevented her from asking Manager to produce certain evidence that would prove that Manager was not truthful, and she had good cause for quitting her employment. (Petition for Appeal, R. Item 21.) The Board reviewed the hearing transcript and concluded that the Referee's conduct was not inappropriate. (Board Order.) The Board further held that the Referee's determination was proper, and Claimant was ineligible for benefits pursuant to Section 402(b) of the Law. (Id.) Accordingly, the Board adopted and incorporated

the Referee's findings of fact and conclusions of law and affirmed the decision. (Id.) Claimant now petitions this Court for review.[6]

On appeal, Claimant again argues that she had good cause for quitting and is entitled to benefits because Employer unilaterally changed her duties, her new job duties as a Data Analyst were more complex than those of a CSR, her pay should have been increased accordingly, and she attempted to resolve this issue before quitting.[7] She asserts that Manager's testimony regarding her work title and job duties was not truthful. Claimant argues, therefore, that the findings of fact based on Manager's testimony – that her job title was CSR, her new job duties did not differ significantly from a call center CSR, and that she initiated calls to customers, (FOF ¶¶ 5-7) – should be rejected.

---

[6] "The Court's review is limited to determining whether constitutional rights were violated, whether an error of law was committed, whether a practice or procedure of the Board was not followed or whether the findings of fact are supported by substantial evidence in the record." Western and Southern Life Ins. Co. v. Unemployment Comp. Bd. of Review, 913 A.2d 331, 334 n.2 (Pa. Cmwlth. 2006). The Board's findings of fact are conclusive on appeal if they are supported by substantial evidence, Chapman v. Unemployment Compensation Board of Review, 20 A.3d 603, 607 (Pa. Cmwlth. 2011), which is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Peak v. Unemployment Compensation Board of Review, 501 A.2d 1383, 1387 (Pa. 1985) (quoting Murphy v. Department of Public Welfare, 480 A.2d 382, 386 (Pa. Cmwlth. 1984)). This Court is bound "'to examine the testimony in the light most favorable to the party in whose favor the Board has found, giving that party the benefit of all inferences that can logically and reasonably be drawn from the testimony'" to determine if substantial evidence exists for the Board's findings. United States Banknote Co. v. Unemployment Comp. Bd. of Review, 575 A.2d 673, 674 (Pa. Cmwlth. 1990) (quoting Taylor v. Unemployment Comp. Bd. of Review, 378 A.2d 829, 831 (Pa. 1977)).

[7] In her brief, Claimant refers to an email she sent to Employer's corporate management regarding her situation and the response she received, which she attached to her Petition for Review but did not present to the Referee. However, we cannot consider these items as it is well-settled that we cannot consider any evidence not made part of the certified record on appeal. Umedman v. Unemployment Comp. Bd. of Review, 52 A.3d 558, 564 (Pa. Cmwlth. 2012).

6

The Board argues that its findings of fact are based on Manager's credited testimony and, therefore, are supported by substantial evidence. It asserts that its credibility determinations are not subject to judicial review. The Board also argues that Claimant is ineligible for benefits because being discontent with one's wages is not a necessitous and compelling reason for voluntarily quitting. The Board notes that Claimant admitted at the hearing that she quit for this reason, (Hr'g Tr. at 6, 9, 12), not because of the change in her employment conditions, and this was the reason the Board found that she left, (FOF ¶ 9). To the extent that Claimant asserts Employer unilaterally changed her work duties, the Board maintains that these changes were not substantial because Claimant's job title remained the same and the basic requirements of her work duties were not altered. Therefore, according to the Board, Claimant had to abide by the changes or risk being ineligible for benefits. Kistler v. Unemployment Comp. Bd. of Review, 416 A.2d 594, 597 (Pa. Cmwlth. 1980).

We first consider Claimant's assertions that the findings of fact regarding her job title and work duties based on Manager's testimony are unsupported because Manager did not truthfully testify. Although we understand Claimant's frustration in not having her testimony believed, it is the Board, not this Court that "determines the credibility of witnesses and the weight to be assigned to the evidence." Tapco, Inc. v. Unemployment Comp. Bd. of Review, 650 A.2d 1106, 1108 (Pa. Cmwlth. 1994). Those determinations "are not subject to re-evaluation on judicial review." Peak v. Unemployment Comp. Bd. of Review, 501 A.2d 1383, 1388 (Pa. 1985) (internal quotation omitted). "The fact that [a party] may have produced witnesses who gave a different version of the events, or that [the party] might view the testimony differently than the Board is not grounds for

7

reversal if substantial evidence supports the Board's findings." Tapco, Inc., 650 A.2d at 1108-09. Here, the Board credited Manager's testimony that Claimant's job title was always CSR and that the duties she was performing were not significantly different from those she was hired to perform, and we may not re-evaluate that determination. Id. at 1108. This testimony constitutes substantial evidence that supports the challenged findings of fact and, accordingly, they are conclusive on appeal. Chapman v. Unemployment Comp. Bd. of Review, 20 A.3d 603, 607 (Pa. Cmwlth. 2011).

Next, we consider whether Claimant had a necessitous and compelling reason for voluntarily quitting her employment. Under Section 402(b) of the Law, "[w]here a claimant has voluntarily quit employment, in order to obtain benefits, she must show that she left her employment for necessitous and compelling reasons." Collier Stone Co. v. Unemployment Comp. Bd. of Review, 876 A.2d 481, 484 (Pa. Cmwlth. 2005). It is well established that:

> [a]n employee who claims to have left employment for a necessitous and compelling reason must prove that: (1) circumstances existed which produced real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and, (4) the claimant made a reasonable effort to preserve her employment.

Brunswick Hotel & Conference Ctr., LLC v. Unemployment Comp. Bd. of Review, 906 A.2d 657, 660 (Pa. Cmwlth. 2006). "Whether a claimant had cause of a necessitous and compelling nature to quit a job is a conclusion of law subject to review by this Court." Warwick v. Unemployment Comp. Bd. of Review, 700 A.2d 594, 596 (Pa. Cmwlth. 1997). "[A]n employer's imposition of a *substantial* unilateral change in the terms of employment constitutes a necessitous and

compelling cause for an employee to terminate her employment." Brunswick Hotel & Conference Ctr., LLC, 906 A.2d at 660 (emphasis added). However, an employee's mere dissatisfaction with her conditions of employment, including her wages, job classification, or additional job duties, does not provide the employee a necessitous and compelling reason to quit. Id. at 660-61; Hostovich v. Unemployment Comp. Bd. of Review, 414 A.2d 733, 735 (Pa. Cmwlth. 1980).

The Board found that Claimant quit her employment "because . . . Employer did not accommodate her request[s] for a raise" (FOF ¶ 9), and it asserts that this finding necessarily excludes all other reasons Claimant now gives for leaving her employment. Baird v. Unemployment Comp. Bd. of Review, 372 A.2d 1254, 1257 (Pa. Cmwlth. 1977). Claimant did testify that she quit because she did not receive a pay raise after repeated requests, not because she objected to the changes to her work duties. (Hr'g Tr. at 6, 9, 12.) But Claimant also testified that she believed a pay raise was warranted due to Employer's substantial unilateral increase of her job duties. In other words, Claimant did not object to the unilateral alteration of her work duties so long as her compensation was increased accordingly, and it was not.

Although Claimant's testimony that her job duties changed on her second day of work was credited, her testimony regarding the change in job title and the nature of those new duties was not. Rather, based on the credited evidence, the Board found that Claimant accepted a position as a CSR earning $14.25 per hour and, although Employer changed her duties from those ordinarily performed by a call center representative, those duties were not significantly different from those she was hired to perform. These findings are supported by the credited testimony of Manager. Thus, Claimant's arguments that Employer imposed a *substantial*

9

unilateral change in the terms of her employment that would warrant a potential pay increase are not supported by the credited evidence.

Notably, an "employer need not agree . . . to [never] modify the tasks or the times or places where the tasks are to be performed. *As long as the modifications are reasonable*, the employee must abide by the employer's decision or risk being held ineligible for unemployment compensation benefits if [s]he refuses." Kistler, 416 A.2d at 597 (emphasis added). Here, Employer's changes were reasonable modifications of Claimant's tasks which she "must abide by . . . or risk being held ineligible for unemployment compensation benefits if [s]he refuses." Id. Although Claimant abided by those changes, she was dissatisfied with her rate of pay after the reasonable modification occurred. However, because there was no substantial unilateral change in the terms or conditions of her employment, Claimant's mere dissatisfaction with her previously agreed-upon pay does not constitute a necessitous and compelling reason for voluntarily quitting her employment.

Accordingly, we affirm the Board's Order.

 

**RENÉE COHN JUBELIRER,** Judge

10

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Daa'iyah Wallace,                     :
                    Petitioner        :
                                      :
            v.                        :     No. 1725 C.D. 2016
                                      :
Unemployment Compensation             :
Board of Review,                      :
                    Respondent        :

**O R D E R**


**NOW**, May 9, 2017, the Motion to Amend Brief filed by Daa'iyah Wallace on February 13, 2017 is hereby **GRANTED**. Additionally, the Order of Unemployment Compensation Board of Review, entered in the above-captioned matter, is hereby **AFFIRMED**.


 

 

 

_____

**RENÉE COHN JUBELIRER,** Judge